AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of ⟩
*(Briefly describe the property to be searched* ⟩
*or identify the person by name and address)* ⟩
⟩  Case No.  2:20-mj-699
985 N. High Street, Apartment 524 ⟩
Columbus, Ohio 43201 ⟩

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____ Southern ____ District of ____ Ohio ____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to Possess with Intent to Distribute Controlled Substance |
| | Attempt to Possess with Intent to Distribute Controlled Substance |

The application is based on these facts:

See Affidavit in Support of Anticipatory Search Warrant

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jacob Smith, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify*

Date:  October 9, 2020      _____

City and state:  Columbus, Ohio      Kimberly A. Jolson
United States Magistrate Judge

## AFFIDAVIT FOR ANTICIPATORY SEARCH WARRANT

Your Affiant, Jacob Smith, being duly sworn, does hereby depose and state as follows:

### I.

### INTRODUCTION

1.  I am currently employed as a Deputy for the Franklin County Sheriff's Office, currently assigned full-time as a Task Force Officer with the Drug Enforcement Administration (DEA) Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code (U.S.C.) § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, U.S.C. § 2516. Your Affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21, U.S.C. § 878 and the Ohio Revised Code. Since 2013, your Affiant has been employed with the Franklin County Sheriff's Office. Prior to that employment, your Affiant was employed with multiple law enforcement agencies within the State of Ohio for approximately three years. Those law enforcement agencies include the Village of Obetz Police Department as a full-time Officer, Sharon Township Police Department as a part-time Officer and the Westerville Police Department as a reserve Officer.

2.  Prior to being assigned to the DEA Task Force in February 2019, your Affiant was a Detective with the Franklin County Sheriff's Office (FCSO), Special Investigations Unit and had been assigned to that unit since July 2014. Your Affiant, while assigned to the Special Investigations Unit, has conducted or participated in numerous state and federal narcotics investigations concerning the possession and distribution of controlled substances. Your Affiant was also assigned to the FCSO Heroin Overdose Prevention and Education (H.O.P.E) Task Force where I conducted numerous criminal investigations pertaining to fatal and non-fatal overdoses, these investigations resulted in convictions in Franklin County Common Pleas Court and United States District Court, Southern District of Ohio.

3.  As a DEA Task Force Officer, I have participated in numerous investigations which have resulted in the successful prosecution of individuals and organizations involved in trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine and other controlled substances. Through the course of these investigations, I have personally interviewed confidential sources and other persons involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked concerning the practices of narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the

1

course of my investigations and through my conversations with more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances

## II.

### PURPOSE OF AFFIDAVIT

4. This Affidavit is made in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for an Anticipatory Search Warrant for the following premises:

   a. the residential property located at **985 N. High Street, Apartment 524 in Columbus, Ohio 43201** (hereinafter referred to as the **TARGET LOCATION**). This premises is more fully described in Attachment A incorporated herein by reference.

5. Based upon the information below, I have probable cause to believe that inside the **TARGET LOCATION** described in the previous paragraph, there is property that constitutes evidence of the commission of a criminal offense; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as a means of committing a criminal offense. Specifically, I have probable cause to believe that within the above mentioned property there is evidence of violations of Title 21, U.S.C. § 846, Conspiracy to Possess with Intent to Distribute and Distribute a Controlled Substance (Methamphetamine) and Attempt to Possess with Intent to Distribute a Controlled Substance. Based on my training and experience, as described above, I believe that there is probable cause to believe that the items listed in Attachment B (incorporated herein by reference) will be found at the **TARGET LOCATION** described in Attachment A.

6. The information contained in this Affidavit is largely based upon investigations conducted by your Affiant and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, only information necessary to establish probable cause that evidence associated with drug trafficking offenses is located at/in the **TARGET LOCATION**. Unless specifically quoted, the conversations described below are set forth in substance.

**III.**

**FACTS SUPPORTING PROBABLE CAUSE**

7.    On October 7, 2020, United States Postal Service (USPS) Office of Inspector
      General (OIG) Special Agent (SA) Dominic Francis identified, using postal
      records, a suspicious parcel in transit from Arizona to 985 N. High Street,
      Apartment 522 in Columbus, Ohio.  According to postal records, this 27.375
      pound parcel (Parcel ID Code: 9505 5104 5112 0280 3281 00), hereinafter
      referred to as TARGET PARCEL, was sent through USPS on October 6, 2020.
      SA Francis noted the TARGET PARCEL was addressed to "Sydney Turner, 985
      N. High Street, Apt 522, Columbus, Ohio 43201". SA Francis also noted the
      TARGET PARCEL had a return address of "Michael Turner, 1218 E. Monroe
      Street, Phoenix, Arizona 85034". According to law enforcement databases,
      investigators determined that the return address of "1218 E. Monroe St., Phoenix,
      AZ 85034" does exist.  However, there is no "Michael Turner" associated with
      that residence.  There are also no individuals with the last name Turner associated
      with the address.   Similarly, according to law enforcement databases, destination
      address "985 N. High St., Apt 522, Columbus, OH 43201" is not a valid address,
      in that although it is a valid residential address, there is no "Sydney Turner"
      associated with that residence. There are also no individuals with the last name
      Turner associated with the address.  Following the discovery of the TARGET
      PARCEL, SA Francis contacted investigators with Drug Enforcement
      Administration (DEA) Columbus District Office (CDO) to include your Affiant
      and notified them of this discovery.

8.    Your Affiant has learned, from SA Francis, about the following characteristics
      used to identify suspicious packages sent through the USPS. Your Affiant has
      learned, drug traffickers frequently use Priority Mail Express and/or Priority Mail,
      services offered by the USPS, to transport narcotics and other dangerous
      controlled substances.  As a result of investigations and successful controlled
      substance prosecutions where Priority Mail Express and/or Priority Mail were
      used, your Affiant has learned of certain characteristics indicative of other Priority
      Mail Express and/or Priority Mail items previously identified as containing
      narcotics or other dangerous controlled substances.  Some of these characteristics
      include, but are not necessarily limited to or used on every occasion -  false or
      non-existent return address, addressee is not known to receive mail at the listed
      delivery address, the package is heavily taped, the package is mailed from a
      known drug source location, labeling information contains misspellings, the label
      contains an illegible waiver signature, unusual odors emanating from the package,
      and the listed address is located in an area of known or suspected drug activity.

9.    Upon discovering the **TARGET PARCEL**, SA Francis conducted a search using
      postal records for other parcels previously mailed to 985 N. High Street in
      Columbus, Ohio. The structure located at 985 N. High Street is a multiple story,
      multiple unit apartment building.  Parcels delivered to this address are kept in a

3

Columbus, Ohio. The structure located at 985 N. High Street is a multiple story, multiple unit apartment building. Some of the Parcels delivered to this address are kept in a common mail/parcel room on the first floor which can be accessed by the residents of the building. During the search of postal records, SA Francis identified multiple parcels which contained some of the above described suspicious characteristics similar to those discovered with the **TARGET PARCEL**. According to postal records, these parcels were delivered in June, July, August and September of 2020. SA Francis determined these suspicious parcels were sent to addresses to include 985 N. High Street, Apartments 524 and 525, Columbus, Ohio. These parcels all were sent from Phoenix, Arizona to Columbus, Ohio; all were Priority Mail parcels; all were paid for in cash at a post office location. Your Affiant knows, through training and experience, individuals who are using the mailing services, to include USPS, will at times use variations of the true address for the suspicious parcel, as well as false or fictitious sender and recipient names. This is done in order to attempt to hinder individuals, to include law enforcement, from associating the actual recipient and/or destination to the suspicious parcel. Your Affiant knows, through training and experience, individuals engaging in criminal activity, to include drug trafficking, will use mailing services, to include USPS, in order to send controlled substances to their criminal co-conspirators involved in drug trafficking.

10.     During the historical searches, SA Francis identified the following three suspicious parcels sent from Phoenix, Arizona to 985 N. High Street, Apartment 524, Columbus, Ohio, **(TARGET LOCATION)**. Each had similar handwritten labels, each dropped off and sent from a post office in Arizona and paid for in cash.

    a.  USPS Priority Mail Parcel # 9505 5137 2372 0181 4323 16; sender listed as Dustin Cole, recipient listed as Jazmin Cole; delivered on July 2, 2020; weight of approximately 7 pounds;

    b.  USPS Priority Mail Parcel # 9505 5137 2371 0224 4716 31; sender listed as James Edward; recipient listed as K Edward; delivered on August 14, 2020; weight of approximately 6.125 pounds; and

    c.  USPS Priority Mail Parcel # 9505 5126 9127 0253 6834 50; sender listed as Ashley Baker; recipient listed as Amber Baker; delivered on September 14, 2020; weight of approximately 23.25 pounds.

11.     On October 7, 2020, law enforcement issued an Administrative Subpoena for Borror Properties which is the owner of the apartment building located at 985 N. High Street in Columbus, Ohio. Upon reviewing the results, your Affiant obtained camera footage for the dates of September 14-15, 2020, and observed an individual, identified as Ermias GOLLA, using the electronic key fob assigned to 985 N. High Street for Apartment 524. Your Affiant identified the individual captured on camera footage using the key fob assigned to Apartment 524 as

GOLLA by using other camera footage provided by Borror property management. In addition, Borror Property Management confirmed GOLLA is the occupant of Apartment 524 upon being shown a photograph of GOLLA. Your Affiant learned, through review of the leasing agreement for apartment 524 that Johnnie Frymire is the listed occupant on the leasing agreement. In addition, this leasing agreement for Apartment 524 has a documented starting date of June 15, 2019.

12. Your Affiant learned, through SA Francis, that the suspicious parcel previously described in paragraph 11(c) was delivered to 985 N. High Street, Apartment 524 on September 14, 2020 at approximately 6:30 p.m.. During the review of the camera footage, your Affiant observed GOLLA walking into an elevator carrying a large cardboard box over his shoulder later in the evening of September 14, 2020, following the delivery of the 23.25 pound suspicious parcel. Your Affiant reviewed security key fob records during the timeframe GOLLA was observed in the elevator with the cardboard box and identified the key fob assigned to 524 was used to access the "White Castle Elevator B." Your Affiant has learned, through Borror Property Management, that the "White Castle Elevator B" is located in the main lobby at 985 N. High Street. In addition, your Affiant knows, while reviewing camera footage, that the background of the photograph of GOLLA going into the elevator with the box is the main lobby of 985 N. High Street. Your Affiant believes, due to GOLLA using the electronic key fob assigned to Apartment 524 and the suspicious parcel being sent to Apartment 524, that the package GOLLA was captured carrying was the 23.25 pound suspicious parcel delivered on September 14, 2020. Your Affiant also believes, based on training, experience and case background information, GOLLA was transporting the 23.25 pound suspicious parcel to the only apartment GOLLA has documented access to which is Apartment 524.

13. During this investigation, your Affiant has learned that the Columbus Division of Police IN-TAC unit conducted a narcotics investigation pertaining to 124 S. Wheatland Avenue in Columbus, Ohio. Investigators learned that on September 16, 2020, the Columbus Division of Police IN-TAC unit executed a search warrant at 124 S. Wheatland Avenue. During the search warrant, law enforcement recovered substances to include approximately 404.9 grams of suspected methamphetamine, approximately 78.1 grams of suspected crack cocaine and approximately 29 grams of suspected heroin from inside the residence. Upon reviewing search warrant photographs taken at 124 S. Wheatland Avenue, investigators discovered the suspected methamphetamine was concealed in a Nike "fanny pack" style bag. This bag was located beside a Cincinnati Bengals NFL football team key lanyard. Upon examining the lanyard, investigators discovered a tag which had the name "Borror" on it, with what appeared to have items to include a grey electronic key fob attached to it. Your Affiant knows, through this investigation, Borror owns properties to include 985 N. High Street in Columbus, Ohio. Your Affiant knows, through investigation, tenants at the Borror property located at 985 N. High Street use electronic key fobs in order to gain access to the property. Your Affiant provided Borror Property Management with a photograph

of the Cincinnati Bengals key lanyard with the Borror tag and electronic key fob attached to it which was photographed at 124 S. Wheatland Avenue. Upon being provided the photograph, property management confirmed the photograph of the electronic key fob appears to be the Borror property electronic key fob used by their tenants. In addition, property management stated the Borror tag is provided to every occupant on their move-in day.

14. In addition to the suspected controlled substances located at 124 S. Wheatland Avenue on September 16, 2020, law enforcement located numerous individuals inside the residence. Among others, one of the individuals was Ermias GOLLA. Investigators learned from Columbus Division of Police Detective Friend, that an individual located within the residence during the search warrant identified GOLLA known as "Jim Jim" as the individual trafficking the narcotics from the 124 S. Wheatland Avenue address.

15. Your Affiant, while reviewing camera footage from September 14th and 15th, observed GOLLA to, at times, be in possession of what is believed to be a black and orange color key lanyard. Your Affiant is aware that the Cincinnati Bengals team colors are black and orange. The key lanyard in GOLLA's possession contained elongated writing with smaller writing or a logo in between. Your Affiant contemporaneously reviewed camera footage of GOLLA with the lanyard and search warrant photographs of the Cincinnati Bengals lanyard from 124 S. Wheatland. During this review, the key lanyards appeared to be similar in color as well as letter and logo placement. In addition to this discovery, your Affiant discovered GOLLA in a surveillance photograph on September 14, 2020 at approximately 7:38 p.m. with the black and orange key lanyard using an object, believed to be the electronic security key fob, to gain access into the 985 N. High Street building. This belief was further substantiated by comparing camera footage of GOLLA and security key fob records for Apartment 524 on September 14th and 15th of 2020.

16. Your Affiant learned from law enforcement reviewing the leasing agreement for 985 N. High Street, Apartment 524, that an individual identified as Johnnie FRYMIRE is listed as the current renter for 985 N. High Street, Apartment 524 residence. Upon learning this information, investigators conducted multiple database searches using FRYMIRE's information in order to identify the individual. During the course of these searches, law enforcement were unable to locate true identifying information for a Johnnie FRYMIRE who, according to property management, is a female. In addition to these search results, investigators learned, through Administrative Subpoena records that Apartment 524 (985 N. High Street) is currently assigned only one electronic security key fob which has been observed being used by GOLLA

17. Your Affiant knows, through training and experience, it is common for individuals engaging in criminal activity, to include drug trafficking, to obtain apartments or residences that are in other individuals names. At times, these

individuals will use fraudulent identification in order to obtain these apartments and/or residences. This hinders law enforcement from associating the individual engaging in criminal activity with the residence they are occupying. In addition, this hinders law enforcement from identifying locations in which the trafficker is maintaining and storing controlled substances and/or United States currency derived as proceeds from drug trafficking. These establishments are commonly referred to as "stash houses."

18. During this investigation, your Affiant learned from Detective Slosser with the Whitehall (Ohio) Division of Police, that investigators with that agency executed a search warrant at 183 S. Burgess Avenue in Columbus, Ohio in August of 2019. Your Affiant learned from Detective Slosser, that 183 S. Burgess Avenue was a known residence being used by Ermias GOLLA to traffic narcotics during Detective Slosser's 2019 narcotics investigation of GOLLA. During the search warrant, investigators located individuals, to include GOLLA, and found him to be in possession of approximately 320.15 grams of methamphetamine, approximately 50.86 grams of fentanyl and approximately 11.56 grams of cocaine. GOLLA is currently under indictment in Franklin County Common Pleas Court for this investigation.

19. On October 8, 2020, United States Magistrate Judge Kimberly A. Jolson authorized a federal search warrant for the TARGET PARCEL. Upon executing the search warrant, law enforcement discovered the TARGET PARCEL contained miscellaneous clothing and approximately 7.29 gross kilograms of a substance which field tested positive for Methamphetamine, a Schedule II controlled substance.

20. On October 8, 2020, law enforcement issued an Administrative Subpoena for Borror Properties pertaining to 985 N. High Street, Apartment 522, which is the listed recipient address for the TARGET PARCEL. Upon receiving the leasing agreement, your Affiant discovered the current documented tenants for Apartment 522 are two individuals with the last name of Baker. Your Affiant knows, through investigation, that the documented sender and receiver's last name on the TARGET PARCEL is Turner.

21. Your Affiant conducted a search on the 985 N. High Street, Apartment 522 Columbus, Ohio residence through the commercially available database TLO. During the search, your Affiant was unable to identify any individuals with the last name Turner associated at 985 N. High Street, Apartment 522 in Columbus, Ohio. Your Affiant believes, due to training, experience and case information, that "Sydney Turner" does not live at Apartment 522 and furthermore is a fraudulent name in relation to being associated with the 522 apartment.

22. On October 8, 2020, investigators with the DEA CDO conducted surveillance at 985 N. High Street. During surveillance, investigators observed GOLLA standing near a sliding door of an apartment looking outside. Your Affiant believes, using

the apartment layout in relation to positioning of the **TARGET LOCATION** as well as the location of the sliding window in which GOLLA was observed looking out, that GOLLA was positioned in the **TARGET LOCATION** when observed during surveillance.

23. Through my training and experience I am aware that methamphetamine is a dangerous narcotic. As such, law enforcement will remove the suspected methamphetamine from the TARGET PARCEL and replace it with a pseudo substance ("sham") prior to attempting delivery of the TARGET PARCEL.

24. On October 9, 2020, your Affiant will arrange for the TARGET PARCEL to be delivered to the mail/parcel room located at 985 N. High Street, Columbus, Ohio, by a United States Postal Services (USPS), Office of Inspector General (OIG) Special Agent posing as a United States Letter Carrier. Upon someone taking possession of the TARGET PARCEL and removing it from the mail/parcel room and entering the **TARGET LOCATION** or displaying intent to enter the **TARGET LOCATION** with the TARGET PARCEL, such as, but not limited to, utilizing the key fob or access device to the **TARGET LOCATION**, turning the handle affixed to the **TARGET LOCATION**, opening or attempting to open the door to the **TARGET LOCATION**, or a similar event, the search warrant will be executed. Furthermore, if the package is transferred to any property located within this Court's jurisdiction, this order authorizes law enforcement to make entry into the property to secure the TARGET PARCEL as well as secure the property until an application for a new warrant can be obtained. The search warrant at the **TARGET LOCATION** will be executed if, and only if, the above conditions are met.

## IV.

## COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

25. Based on my training, education, and experience, as well as training, education and experience of other law enforcement officers, I know:

   a. That drug traffickers often amass significant assets from their illegal drug trafficking activities.

   b. That drugs traffickers often maintain large amounts of U.S. currency derived from illegal activities. It is common for individuals to secrete contraband and conceal proceeds of drug sales and records of drug transactions in secure locations such as personal residences or businesses where they have ready access and control. Often, these locations are used to conceal the existence of substantial wealth from law enforcement authorities.

8

c. That drug traffickers also attempt to legitimize their profits by converting it into other assets, such as stocks, bonds, precious metals, jewelry, real estate, vehicles and other assets. To accomplish these goals, these individuals utilize false and fictitious business records, nominee purchasers, foreign and domestic banks, securities, cashiers checks, money drafts, letters of credit, brokerage houses, real estate shell corporations and business fronts. These individuals conceal, in their residences, businesses, safes, safe deposit boxes, storage units and vehicles, currency, cashier's checks, money orders and other negotiable instruments, as well as the records relating to the acquisition, conversion, movement, transfer, and disbursement of these funds and assets. Additionally, the drug traffickers themselves usually control access to these areas. Further, it is not uncommon for narcotics traffickers to "legitimize" their funds through casinos, documenting their "winnings" in an attempt to show an additional source of income.

d. That drug smugglers are not unlike other members of society in that they rely on credit and debit cards to make financial payments. Records relating to the use of these cards can provide valuable information to the investigation by establishing, among other things, the amount of money that is being spent by the suspects, their travel patterns (e.g., using a credit card to pay for gasoline on a cross-country trip), and may further identify businesses which are associated with the illegal activities of the suspects.

e. That drug traffickers deal in currency and store currency in conveyances, homes and at business sites. Furthermore, the Currency Transaction Report (CTR) (IRS Form 4789) is required to be completed and filed with the Internal Revenue Service by all financial institutions on every currency transaction that exceeds $10,000. This requirement causes tremendous problems for drug traffickers when they attempt to negotiate their illegal profits at financial institutions because these reports can be made available to law enforcement officials. It is quite common for individuals who deal in illegal controlled substances to convert drug proceeds (currency) into cashiers checks and or money orders in amounts less than $10,000 at numerous financial institutions over the course of several days in order to avoid the CTR filing requirement. Furthermore, drug traffickers often recruit other individuals to convert drug proceed currency for them in order to avoid handling the currency themselves.

f. That drug traffickers use financial habits designed to minimize and hide a paper trail. Traffickers often purchase and/or title their assets in fictitious names, aliases, or in the names of relatives, friends, associates or business entities to avoid detection of these assets by government agencies, especially the Internal Revenue Service. Regardless of documented ownership, the drug traffickers continue to use these assets and exercise control over them.

9

g.      That drug traffickers maintain books, records, receipts, notes, ledgers, bank records, accounting records and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of controlled substances. These ledgers often contain amounts of drugs; accounting of payments made and received, accounts receivable and accounts payable used in furtherance of their drug trafficking activities. These individuals commonly "front" (provide illegal controlled substances on consignment) illegal controlled substances to their clients and thus keep some type of record concerning moneys owed. Drug traffickers often maintain phone books, address books and other papers containing names, telephone numbers, and addresses of suppliers and purchasers of controlled substances. The names and numbers are often written in a code that requires drug traffickers to keep a key to their particular code.

h.      The aforementioned books, records, receipts, notes, ledgers, codes, etc., are usually maintained in a secure location where dealers in illegal controlled substances have ready access to them such as on their person, vehicle, business, safe deposit box, home safe, personal or business computer, storage facility or in other residences or businesses where they periodically reside or have access and control.

i.      It is not uncommon for individuals who deal in illegal controlled substances to take, or cause to be taken, photographs of themselves, their associates, their property and their illegal product. These individuals usually maintain these photographs in their possession or in residences where they reside or have access and control.

j.      That drug traffickers commonly use cellular telephones to coordinate various narcotics trafficking activities. Other traffickers, in order to avoid speaking on telephones, use numeric codes on electronic devices to communicate with co-conspirators.

k.      That drug traffickers often engage in domestic and/or international travel in relation to the smuggling of illegal contraband. Analysis of travel records and documents can assist in the development of the investigation by revealing potential source and/or destination locations related to the distribution of illegal narcotics or the payment of related proceeds.

l.      Persons who traffic in controlled substances are not unlike any other individual in our society in that they maintain documents and records. These documents and records will normally be retained for long periods regardless of whether their value to the individual has diminished. Often times, this type of evidence is generated, maintained and subsequently forgotten about. Hence, documents that one would normally think a prudent person would destroy because of their incriminating nature are

still possessed months or even years after they come into the possession of a drug trafficker. Often times these individuals do not even realize the incriminating nature of the documents they keep.

m.     That to protect their controlled substances and drug proceeds, drug dealers also keep firearms and security systems at their residences.

## V.

## CONCLUSION

26.     Based upon the details as outlined above, I believe that GOLLA resides at the **TARGET LOCATION** and will be the intended recipient of the TARGET PARCEL. Based on the facts set forth in the Affidavit, your Affiant believes there is probable cause to believe that if the TARGET PARCEL is delivered and the above conditions are met, that evidence of a crime; contraband, fruits of crime, or other items illegally possessed; and property designed for use, intended for use, or used in committing a crime and associated with the above listed drug trafficking offenses exists and can be found inside the **TARGET LOCATION** WHEREFORE, based on the foregoing evidence of drug trafficking, I respectfully request that the Court issue a search warrant and sealing order for the location described in Attachment A and the property described in Attachment B. Investigators request that this warrant be SEALED.

Jacob Smith
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me
this ___9th___ of October, 2020

Kimberly A. Jolson
United States Magistrate Judge

11

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

**The Target Location:  985 N. High Street, Apartment 524, Columbus, Ohio 43201** is described as a multiple story and multiple unit structure, white, grey and red exterior color with brick type siding. The TARGET LOCATION hallway is maroon in color with the TARGET LOCATION exterior door being red in color and faces in a southern direction. The numbers "524" are affixed vertically in gold numbering against the red molding on the right side of the front door.

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED

The evidence to be searched for and seized is:

A.    Methamphetamine and any other controlled substances;

B.    Documents and other items tending to show dominion and control over the premises/vehicle, including, but not limited to, bills or other business-related documents, correspondence, photographs;

C.    Documents or other items tending to identify co-conspirators and sources, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, or lists of names;

D.    Items commonly used to facilitate drug trafficking, including but not limited to items such as firearms, ammunition, cellular telephones, pay/owe sheets, packaging materials, "cut", scales, and grinders; in addition any storage devices including but not limited to; computers or tablet devices.

E.    Likely proceeds of drug trafficking, such as United States currency and other negotiable instruments; and

F.    Documents and other items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.

G.    USPS Parcel ID: 9505 5104 5112 0280 3281 00 (TARGET PARCEL).

H.    Any shipping packages, parcels, envelops, or similar packaging material to documentation of the packages to include but not limited to; receipts that would shipped or document shipping through mailing services to include United States Postal Service.

## ATTACHMENT OF CONDITIONS

Upon someone taking possession of the TARGET PARCEL and removing it from the mail/parcel room and entering the **TARGET LOCATION** or displaying intent to enter the **TARGET LOCATION** with the TARGET PARCEL, such as, but not limited to, utilizing the key fob or access device to the **TARGET LOCATION**, turning the handle affixed to the **TARGET LOCATION**, opening or attempting to open the door to the **TARGET LOCATION**, or a similar event, the search warrant will be executed.